UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


EUREKA S. PERRY,

        Plaintiff,

                                      Case No.  1:13-CV-1118

v.

                                      HON. ROBERT HOLMES BELL

UNIVERSAL MEDICAL STAFFING, INC.,
d/b/a ALLIANCE HOME HEALTH CARE
SERVICES,

        Defendant.

_____/

## O P I N I O N

     This action alleging religious discrimination is before the Court on Defendant's motion for summary judgment.  For the reasons that follow, the motion will be granted and judgment will be entered for Defendant.

### I.

     In August 2010, Plaintiff Eureka S. Perry applied at the Berrien Springs office of Defendant Universal Medical Staffing, Inc., d/b/a Alliance Home Health Care Services ("Alliance") to work as a home health care aide.  Plaintiff is a Seventh Day Adventist who observes the sabbath from sundown on Friday to sundown on Saturday.  (Perry Dep. 15.) Plaintiff indicated on her application for employment that she desired to work "25 or 30" hours per week, and that she was available "4 or 5 or 6 hours a day."  (Def. Ex. A, ECF No. 14.)  During her interview, Plaintiff advised that she would not be available to work on

Saturdays due to her religious beliefs.  (Interview Sheet, ECF No. 17; Wyre Dep. 15-16.)
Plaintiff was employed by Defendant as a part-time employee beginning August 24, 2010.
Plaintiff acknowledges that she was an "at will " employee.  (Perry Dep. 47.)

On December 5, 2011 Plaintiff filed for unemployment benefits because Defendant
was not giving her enough hours of work.  (Perry Dep. 76; Def. Ex. G.)  Defendant contested
Plaintiff's eligibility, and on March 5, 2012, the Unemployment Insurance Agency issued a
determination that Plaintiff was not eligible for benefits.  Plaintiff challenged the denial and
was eventually awarded unemployment benefits.  (Perry Dep. 83; Def. Ex. G.)  Beginning in
March 2012, Plaintiff's hours of employment were increased, and by the summer of 2012 she
was averaging approximately 25 hours of work per week.  (Perry Dep. 79-82; Def. Exh. H.)

Plaintiff had been working regularly with a particular client, Mr. W, since May 2012,
and worked for him on seven evenings between October 21 and October 29 from 7:00 p.m.
to 9:00 p.m.  (Schedule for Perry Visits, Def. Ex. H; Wyre Dep. 66.)  On Tuesday, October
30, 2012, Plaintiff called Rebecca Wyre, the branch manager of Defendant's Berrien Springs
office, at approximately 12:50 p.m. and advised that she would not be working her 7:00 p.m.
to 9:00 p.m. shift for Mr. W that night.  (Wyre Dep. 6, 55.)  Plaintiff told Wyre that she did
not want to work because she was "uncomfortable."  (Perry Dep. 115.)  Plaintiff did not
explain further because she was in the car with her mother, and she knew she was not
supposed to discuss clients' personal problems in front of other people. (Perry Dep. 115-16.)
Plaintiff was not sick and her car was operable.  (Perry Dep. 116-17.)  Plaintiff told Wyre

that other than being uncomfortable, she was otherwise capable of working that night.  (Perry Dep. 117.)  Wyre told Plaintiff that it was short notice and that she could not get anyone to cover the shift.  (Perry Dep. 118.)  Wyre asked if Plaintiff would at least cover Mr. W that night, and that they would find someone else to cover him from then on.  (Wyre Dep. 49.) Plaintiff refused, saying she had called more than four hours in advance, and that Wyre or somebody else in the office should cover the shift.  (Perry Dep. 118.)  After confirming that Plaintiff was not going to be working that evening's shift, Wyre abruptly hung up the phone. (Perry Dep. 119.)

Wyre called her supervisor, Jennifer Lemkuil, for approval to terminate Plaintiff's employment.  Based on Wyre's description of Plaintiff's behavior, Lemkuil determined that Plaintiff had been insubordinate, had breached the disciplinary policy, and needed to be terminated.  (Lemkuil Dep. 22.)  In her 15 years in business, Lemkuil had never heard of someone just refusing to go to work without an explanation and basically telling her supervisor she would have to do it.  (Lemkuil Dep. 22.)

When Plaintiff called Wyre the following day to schedule another client, Wyre told her she was being terminated for insubordination.  (Perry Dep. 119.)  Plaintiff then explained that the reason she was uncomfortable was because Mr. W had cheated on his hours by entertaining other people at his house during Plaintiff's visit, and that there had been drinking.  (Perry Dep. 120.)  She also explained that she had not disclosed this the day before because there had been people around.  (Perry Dep. 121.)

On November 5, 2012, Wyre sent Plaintiff a termination letter which stated as follows:

> On October 30th you called me at approximately 12:50pm to say you wanted to give up a client's night hours. When I asked you why you told me you did not want to talk about it. I asked you if the client was being inappropriate or something and you replied no. I then told you that with such short notice it would be hard to get someone to cover this client. I also explained that since you told me you were not sick and the client was not doing anything wrong I expected you to report to work that night. I also told you that you would not have to go back to the client after that. You indicated you wanted to keep your morning hours and refused to work your scheduled shift that night, you then told me that if I couldn't find anyone to replace you it was my responsibility or someone in the office's job to go and cover the client. Refusing a directive from your supervisor with no good cause is against Alliance's policy. Also, dropping a client with such short notice is not acceptable and could potentially pose harm to the client and Alliance.

(Term. Letter, Pl. Ex. 6, ECF No. 22.) The letter concluded that Plaintiff's refusal to cover her client was a direct violation of Alliance policy, and that she was therefore terminated. (*Id.*)

Plaintiff filed this action in the Berrien County Circuit Court, alleging unlawful discrimination on the basis of religion in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000 *et seq.*, and the Elliott Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2101 *et seq.* Defendant removed the action to this Court on the basis of federal question jurisdiction. (ECF No. 1.) Defendant has filed a motion for summary judgment.

## II.

The Federal Rules of Civil Procedure require the Court to grant summary judgment

4

"if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If Defendant carries its burden of showing there is an absence of evidence to support a claim, Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In reviewing a motion for summary judgment this Court cannot weigh the evidence, make credibility determinations, or resolve material factual disputes.  *Alman v. Reed*, 703 F.3d 887, 895 (6th Cir. 2013); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (stating that on a motion for summary judgment "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").  "Instead, the evidence must be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party."  *Ohio Citizen Action v. City of Englewood*, 671 F.3d 564, 569-70 (6th Cir. 2012) (citing *Matsushita*, 475 U.S. at 587; *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009)).  Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact.  *Liberty Lobby*, 477 U.S. at 252.  The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff.  *Id.*;

*see generally Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476-80 (6th Cir. 1989).

**III.**

Plaintiff alleges unlawful discrimination on the basis of religion in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and the Elliott Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws § 37.2201, *et seq.* Both statutes prohibit religious discrimination in employment decisions. The same analysis is applied to claims under Title VII and ELCRA. *Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 614 n.4 (6th Cir. 2003).

Plaintiff contends that she was terminated because of her refusal to take offered assignments that would require her to work on Saturdays. (Jt. Status Rpt., ECF No. 6.) Defendant contends that Plaintiff's termination had no relation to her religion; she was terminated because she was an at will employee who failed to comply with company policies and was insubordinate with a supervisor. (*Id.*)

Plaintiff has not come forward with any direct evidence of religious discrimination by Defendant. Plaintiff contends that Defendant has admitted that Plaintiff's religion was a factor considered when rendering decisions regarding Plaintiff's employment. Plaintiff 's argument is based on a misconstruction of Wyre's testimony. Wyre testified that she referenced Plaintiff's failure to accept Saturday work in response to Plaintiff's request for unemployment benefits in order to show why Plaintiff had so few hours of employment and why Plaintiff was not taking more hours. (Wyre Dep. 84.) The testimony Plaintiff refers to is not direct evidence of religious discrimination. Wyre's testimony is not an admission that

6

Plaintiff's refusal to work on Saturdays was a factor in her decision to terminate Plaintiff's employment, nor is it an admission that it affected any decision that she made regarding Plaintiff's employment.

Because there is no direct evidence of religious discrimination, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). *White v. Baxter Healthcare* Corp., 533 F.3d 381, 391 (6th Cir. 2008). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence; if the plaintiff does so, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action; and if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id.* at 391-92 (citing *Burdine*, 450 U.S. at 253). "Although the burdens of production shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (citing *Burdine*, 450 U.S. at 256).

**A. Disparate Treatment**

Plaintiff has characterized her claim as one involving disparate treatment. To make out a prima facie case of disparate treatment because of her religious beliefs, Plaintiff must establish that she was a member of a member of a protected class, that she suffered an

adverse employment action, that she was qualified for the position, and that she was treated differently from similarly situated employees of an unprotected class for same or similar conduct. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 347 (6th Cir. 2012); *Rasheed v. Chrysler Motors Corp.*, 493 N.W.2d 104, 107 (Mich. Ct. App. 1992), *rev'd on other grounds sub nom. Rasheed v. Chrysler Corp.*, 517 N.W.2d 19 (Mich. 1994)).  Plaintiff bears the burden of proving that other employees, who were "similar in all of the relevant aspects" received more favorable treatment. *Chattman*, 686 F.3d at 348.

Plaintiff asserts that she garnered her employer's disfavor by refusing to work on Saturdays, and that she was subject to "disparate application of published rules," when she was terminated for timely calling off of work.  (Pl. Br. 3.)  Although Plaintiff alleges that "[s]imilarly situated co-workers, not of Plaintiff's protected class, did not suffer adverse employment action for the same conduct over which the Defendant terminated Plaintiff's employment," (Compl. ¶ 19), she had not come forward with any evidence that any similarly situated employee was treated differently under the Defendant's Absenteeism Policy.  She has not produced evidence that any other employee who called to cancel a shift without explanation was treated more leniently.  Neither could Plaintiff identify anyone of another religion who was treated better than she was.  (Perry Dep. 96.)  Because Plaintiff has not produced any evidence that she was treated differently than a similarly situated co-worker who was not a member of her protected class, Plaintiff has failed to establish a prima facie case of disparate treatment.

8

**B. Failure to Accommodate**

Plaintiff has also characterized her claim as a failure to accommodate her religious restrictions. (Pl. Br. 4.) To establish a prima facie case based on failure to accommodate, Plaintiff must show that (1) she holds a sincere religious belief that conflicts with an employment requirement; (2) she has informed the employer about the conflicts; and (3) she was discharged for failing to comply with the conflicting employment requirement. *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007).

Plaintiff's accommodation claim fails because she has not pointed to any evidence that her religious beliefs conflicted with her employment. Defendant never required Plaintiff or any other employee to work on her Sabbath. (Wyre Dep. 87.) The evidence is unrebutted that in scheduling employment, Defendant's practice is to inform caregivers about the available shifts  and to allow the caregivers to choose which of those shifts to work. (Wyre Dep. 64, 78, 84-85, 87, 89.) Wyre's supervisor, Jennifer Lemkuil, verified that employees are allowed to pick and choose when they want to work. (Lemkuil Dep. 16-17, Def. Ex. E.) Wyre testified that she supervises approximately 60 caregivers and cannot remember everyone's religious requirements. Accordingly, it is her practice to offer employees the hours that are available, regardless of their religious practices, and to let the employees choose what days to take. (Wyre Dep. 87.) Accordingly, the fact that Plaintiff was offered Friday evening or Saturday employment does not suggest that she was required to work on her Sabbath.

Because Plaintiff selected her own schedule from the available work, Plaintiff's inability to work on Saturdays did not conflict with Defendant's employment practices and did not require accommodation. Plaintiff has accordingly failed to state a discrimination claim based on failure to accommodate.

## C. Pretext

Even if Plaintiff had created a prima facie case of religious discrimination under either a disparate treatment or an accommodation theory, Defendant has come forward with a legitimate, non-discriminatory reason for the adverse employment action, i.e., that it discharged Plaintiff for refusing to work her scheduled shift without an excuse and for insubordination. Plaintiff contends that there are questions of fact as to whether the stated reason for her discharge was the true reason, or whether it was instead pretext for unlawful discrimination.

"A plaintiff can establish pretext by demonstrating that the defendant's articulated legitimate, nondiscriminatory reason either: (1) lacks a basis in fact, (2) did not actually motivate her discharge, or (3) was insufficient to motivate her discharge." *Vincent v. Brewer Co.*, 514 F.3d 489, 497 (6th Cir. 2007) (citing *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 319 (6th Cir. 2007)).

Plaintiff contends that Defendant's Absenteeism Policy allows caregivers to refuse to work a shift that they had previously accepted as long as they provide four hours' notice. Plaintiff contends that Defendant's assertion that she needed good cause to call off work was

a modification of its policy, and that Defendant made this modification for purposes of finding her in violation of the policy and as a pretext for discrimination.

Plaintiff's contention is not supported by the language of the Policy or by any other evidence of record. Contrary to Plaintiff's assertions, Defendant's Absenteeism Policy does not permit employees to cancel their scheduled work without good cause. Defendant's Policy on Employee Absenteeism provides in pertinent part:

> It is the goal of Alliance Medical Services to have employee's NOT call off for a scheduled shift. Failure of employees to show up for scheduled shifts has disastrous results. It hurts the reputation of the Agency, Facilities question the employee's ability to show up for work and may not except [sic] that employee back, and most of all it compromises patient care. In certain circumstances employees' [sic] will be unable to show up for scheduled work. In those circumstances the following procedures must be followed . . . .

(Absenteeism Policy, Pl. Ex. 5, ECF No. 21.) The Policy further provides that "[o]nce an employee is scheduled for work he/she is expected to show up for work. DO NOT TAKE A SHIFT UNLESS YOU KNOW YOU ARE ABLE TO SHOW UP." (*Id*.) "If an employee is **unable** to show up for a scheduled shift they must give at least 4 hours notice." (*Id.*) (emphasis added). "If you are absent for a shift without calling in to **explain** why you are not at work, you will be considered to have voluntarily resigned from your position. (*Id.*) (emphasis added). Defendant's good cause requirement is supported by the language of the Policy. As Wyre explained, "[b]eing unable to work is different than saying I'm not going to work." (Wyre Dep. 50.) "It would be impossible to run a home health care business when employees can just call off just because they want to." (Wyre Dep. 60.)

11

Defendant explained the importance of showing up for scheduled shifts at the time Plaintiff interviewed for employment.  One of the interview questions asked "What are reasons of why you would call off?"  Plaintiff responded "really sick – lot of pain."  (Pl. Ex. 1, ECF No. 17.)  The interview sheet also instructed the interviewer to "Discuss with the applicant on how strict Alliance is with attendance and the reasons why.  Make sure they realize the position will never work out for them if they have issues with attendance.  Do they think they can work for a company that requires them to be at all scheduled shifts?"  (*Id.*) Although it is not clear whether Wyre discussed this question with Plaintiff, the question on the interview form highlights the importance Defendant placed on attendance.

The unrebutted evidence supports Defendant's position that an employee could not call off a shift without good cause.  Plaintiff has not shown that Defendant's good cause requirement was a pretext for discrimination.

Plaintiff has also alleged pretext based on her contention that Wyre's testimony that she was a sub-par employee has been discredited.  Wyre described Plaintiff as a sub-par employee because she called off at the last minute on several occasions.  (Wyre Dep. 26.) Plaintiff presented evidence that there was only one previous occasion, not several, where she called off an entire shift.  (Wyre Dep. 30-31; Caregiver Notes, Pl. Ex. 3.)  Wyre, however, testified that when she referred to Plaintiff's call offs, she was also referring to tardies.  (Wyre Dep. 36.)  The Policy defines "absence" as not only "failure to report and remain at work as scheduled," but also as "late arrival at work."  (Wyre Dep. 36-37;

12

Caregiver Notes.)   The Caregiver Notes reflect that in addition to January 19, 2011, when Plaintiff called off on her 2:30 shift at 2:45, there were also six occasions when Plaintiff was tardy.  (Caregiver Notes.)

The evidence does not suggest that Wyre's opinion that Plaintiff was a sub-par employee lacks a basis in fact.  The evidence supports Wyre's testimony that Plaintiff called off scheduled shifts, either by not showing or by showing up late on more than several occasions.  Moreover, even if there were a dispute of fact concerning Wyre's testimony, it is not a material issue of fact because being a sub-par employee was not one of Defendant's stated reasons for discharging Plaintiff.  Plaintiff has failed to come forward with evidence to show that her employer's stated reason for her discharge was a pretext for discrimination.

Plaintiff suspects that she was treated differently because she refused to work on Saturday.  However, she has failed to produce any evidence to support her suspicion.  No reasonable finder of fact could reasonably conclude that Plaintiff was terminated for refusing to work on Saturdays.  Because Plaintiff has failed to make out a prima facie case of discrimination, and, additionally, because she has failed to show that the employer's stated reason for her discharge was a pretext for discrimination, Defendant's motion for summary judgment will be granted and judgment will be entered in favor of Defendant.

An order and judgment consistent with the opinion will be entered.

Dated: <u>October 17, 2014</u>                    <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE

13